**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 22-cv-23242-BLOOM /Otazo-Reyes

WEISS RATINGS, LLC,

    Plaintiff,
v.

THE INDIVIDUALS, BUSINESS ENTITIES, AND
UNICORPORATED ASSOCIATIONS RESPONSIBLE
FOR REGISTERING, OWNING, AND OPERATING
THE WEBSITES LOCATED AT THE URLS:
WEISSRATINGS.ONLINE AND
WEISSCRYPTOINVESTMENT.COM,

    Defendants.
_____/

## ORDER ON MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Weiss Ratings, LLC's ("Plaintiff") Motion for Entry of Default Final Judgment, ECF No. [15], ("Motion"), filed on January 11, 2023. A Clerk's Default was entered against Defendants on December 28, 2022, *see* ECF Nos. [10]-[11]. Defendants failed to appear, answer, or otherwise respond to the Complaint, ECF No. [1], despite having been served. *See* ECF No. [8]. The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, the Motion is granted.

### I. INTRODUCTION

Plaintiff brought this action against Defendants for various trademark infringement and false advertising violations under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and common law, cybersquatting under 15 U.S.C. § 1125(d), and violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. *See* ECF No. [1]. In its Complaint, Plaintiff alleges that Defendants are advertising, offering for sale, and selling services bearing and/or using identical or confusingly similar iterations of its trademark and other intellectual property within

this District through their fully interactive commercial Internet websites and supporting domains operating under the domain names "weissratings.online" and "weisscryptoinvestment.com" ("Domains").

Plaintiff further alleges that Defendants' unlawful activities have caused and will continue to cause irreparable injury because Defendants have (1) deprived Plaintiff of its ability to determine how its trademarks are presented to the public; (2) defrauded the public into thinking Plaintiff has authorized Defendants' services; (3) deceived the public as to Plaintiff's association with, or endorsement of, Defendants' services and the Domains; and (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill, as well as the commercial value of its trademarks.

In its Motion, Plaintiff seeks an entry of default final judgment against Defendants on all Counts of its Complaint, and further requests that the Court enjoin Defendants from infringing on its trademarks and other intellectual property and transfer the Domains to Plaintiff.

## II.   FACTUAL BACKGROUND

Plaintiff is the owner of the entire right, title, and interest in and to the "Weiss Ratings" trade name, trademark, logo, and the associated Internet domain "weissratings.com," which are used in connection with its business. *See* ECF No. [1] at ¶ 22. Plaintiff provides investors with ratings, research and educational newsletters that provide high quality and accurate information related to financial services and markets. *Id*. at ¶ 26. Defendants, through the various fully interactive, commercial Internet websites and supporting domains operating under the Domains, have advertised, offered for sale, or sold services that are falsely associated with, and infringe upon, Plaintiff's trademark. *See id*. at ¶ 39-40

Based on the well-pled facts in its Complaint, Plaintiff has sufficiently shown that Defendants have infringed on its intellectual property and have engaged in cybersquatting by

2

peddling their services at confusingly similar internet websites. Plaintiff has never authorized or licensed Defendants to use its trademark or any materially similar imitations. *Id*. at ¶ 38. Plaintiff has determined that Defendants use language on their website that is present on numerous other cryptocurrency scam sites. *Id*. at ¶ 5. Plaintiff has submitted sufficient evidence showing Defendants have engaged in unauthorized use of Plaintiff's trade name, trademark, and logo. See *id*. at ¶¶ 39, 43-44, 46.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). "[B]efore entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis in original). "[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citations omitted).

If the complaint states a claim, the Court must then determine the amount of damages and, if necessary, "may conduct hearings . . . [to] determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). However, where all the essential evidence to determine damages is on the paper record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also Evans v. Com. Recovery Sys., Inc.*, No. 13-61031-CIV, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) (following the entry of a default judgment, damages may be awarded 'without a

hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation,' so long as all essential evidence is a matter of record." (citation omitted)).

IV. **DISCUSSION**

A. **Claims**

i. **Trademark Infringement and False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A)**

Section 43 of the Lanham Act, 15 U.S.C. § 1125, provides liability for infringement of an unregistered mark[1] under, 15 U.S.C. § 1125(a)(1)(A). Under § 1125(a)(1)(A) the plaintiff must demonstrate that (1) it has a valid and legally protectable mark entitled to protection; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *See Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984).

The Eleventh Circuit uses a seven-factor test in determining the third element, likelihood of confusion. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506-1509 (11th Cir. 1985). These factors are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. *See Lipscher v. LRP Publ'ns, Inc.,* 266 F.3d 1305, 1313 (11th Cir. 2001). In particular, to prevail on a claim for false designation of origin, a plaintiff must prove that defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of defendants with plaintiff, or as to the origin, sponsorship, or approval, of defendants' services by plaintiff. *See* 15

---

[1] "[T]he use of another's unregistered, *i.e.,* common law, trademark can constitute a violation of [§ 43(a)] where ... the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a [false] representation that its goods came from the same source." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512-13 (11th Cir. 1984) (internal quotation marks omitted).

4

U.S.C. § 1125(a)(1). The test for liability for trademark infringement and for false designation of origin is the same, *i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

### ii. False Advertising Under 15 U.S.C. § 1125(a)(1)(B)

To prevail on a claim for false advertising of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendant used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, a false representation of fact in commercial advertising or promotion which misrepresents the nature, characteristics, qualities, of his or her or another person's goods, services, or commercial activities and is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' goods or services by Plaintiff. *See* 15 U.S.C. § 1125(a)(1). To establish liability for false advertising a Plaintiff must establish that "(1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement." *Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

### iii. Cybersquatting Under 15 U.S.C. § 1125(d)

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name that is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. See 15 U.S.C. § 1125(d). "To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or

famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).

      iv.      **Common Law Unfair Competition and Trademark Infringement**

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-8381-CIV-PAINE, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1986) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)"."); see *also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule ... the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under the Lanham Act. *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

      v.      **Florida's Unfair and Deceptive Trade Practices Act**

Florida's Deceptive and Unfair Trade Practices Act protects "the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2). An unfair practice is one that "offends established public policy," or is

"immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *See, PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla. 2003). Trademark infringement and unfair competition are unfair and deceptive trade practices in violation of the Deceptive and Unfair Trade Practices Act. *See, e.g., Laboratorios Roldan v. Tex Inc.*, 902 F. Supp. 1555, 1569-70 (S.D. Fla. 1995) (intentionally palming off or passing off products is the type of behavior the statute prohibits); *Big Tomato v. Tasty Concepts, Inc.*, 972 F. Supp. 662, 664 (S.D.Fla.1997) (the statute provides for injunctive relief against continued trademark infringement); *Klinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1480 (S.D. Fla. 1990); *General Time Corp. v. Big Ben*, 1 U.S.P.Q.2d 1239 (S.D. Fla. 1986). As such, claims under the Deceptive and Unfair Trade Practices Act rise or fall on the success of Plaintiff's related Lanham Act claims. *See, Suntree Tech., Inc. v. EcoSense Int'l, Inc.,* 802 F. Supp. 2d. 1273, 1279 (M.D. Fla. 2011).

### B. Liability

The well-pled factual allegations of Plaintiff's Complaint properly allege and support the elements for each of the claims enumerated above. *See* ECF No. [1]. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is

available. *See, e.g., PetMed Express, Inc*, 336 F. Supp. 2d at 122-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Plaintiff has carried her burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (internal quotation marks omitted); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales.") The Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. [1]. Further, the Complaint alleges that by infringing on Plaintiff's trademark, Defendants' services it advertises, offers for sale, and sells at the Domains confuse consumers into believing that Plaintiff either is the seller, is affiliated with Defendants, or endorses Defendants' conduct. *See id.*

Additionally, Plaintiff has no adequate remedy at law so long as Defendants continue to operate the websites under the Domains, because Plaintiff will have no control over Defendants' false association with Plaintiff's services. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result absent a permanent injunction. Plaintiff would face significant hardship from its inability to control its reputation, whereas Defendants would face no hardship at all. Defendants have no cognizable hardship, as a permanent injunction would preclude them from marketing illicit cryptocurrency trading services and pyramid schemes designed solely to abscond with consumers' money. To that end, the public has a strong interest in a permanent injunction. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration added) (citation omitted)); *BellSouth Advert. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount.").

District courts are expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name. See 15 U.S.C. § 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g., Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all

9

other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities by canceling or transferring the Domains and assigning all rights, title, and interest to the Domains to Plaintiff so they may no longer be used as platforms for the marketing of infringing services without Plaintiff's consent.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, **ECF No. [15]**, is **GRANTED** against Defendants. Final Default Judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 12, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record